UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

────────────

NO. 12-2064

────────────

UNITED STATES OF AMERICA,

       Plaintiff/Appellee,

vs.

EDDIE CHACO, JR.,

       Defendant/Appellant.

───────────────────────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
DISTRICT COURT NO. 10-CR-3463
JAMES O. BROWNING, UNITED STATES DISTRICT JUDGE

───────────────────────────────

APPELLEE'S ANSWER BRIEF --  NO ATTACHMENTS

────────────────────

ORAL ARGUMENT IS REQUESTED

                              KENNETH J. GONZALES
                              United States Attorney

                              DAVID N. WILLIAMS
                              Assistant United States Attorney
                              Post Office Box 607
                              Albuquerque, NM  87103
                              (505) 346-7274
                              Attorneys for Appellee

September 2012

## TABLE OF CONTENTS

PAGE

TABLE OF CASES AND OTHER AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . ii

PRIOR OR RELATED APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Testimony of Jane Doe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Other Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    The Defense Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.    Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    *Framing the Issue in the District Court.* . . . . . . . . . . . . . . . . 11

        2.    *Waiver vs. Plain Error.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT. . . 20

BRIEF FORMAT CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION. . . . . . . . . . . . . 22

i

# TABLE OF CASES AND OTHER AUTHORITIES

## TABLE OF CASES

PAGE

*United States v. Carrasco-Salazar*,
    494 F.3d 1270 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Corderey*,
    656 F.3d 1103 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Cruz-Rodriguez*,
    570 F.3d 1179 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Hardwell*,
    80 F.3d 1471 (10th Cir),
    *reh'g granted in part on other grounds*, 88 F.3d 397 (10th Cir. 1996). . . . 10

*United States v. McGehee*,
    672 F.3d 860 (10th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McHorse,*
    179 F.3d 889 (10th Cir 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18-20

*United States v. Pinson*,
    542 F.3d 822 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Rodriguez*,
    192 F.3d 946 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Turrietta ,*
    __ F.3d __, 2012 WL 3711871 (10th Cir. Aug. 28, 2012). . . . . . . . . . . . . 16

ii

## TABLE OF OTHER AUTHORITIES

PAGE

18 U.S.C. § 1153. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2241(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2246(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Fed. R. Evid. 414. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 18

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.

iii

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

The district court told Chaco to submit a limiting instruction concerning

uncharged conduct if he wanted the court to give such an instruction.  Chaco did

not submit one.  Chaco told the district court at the conclusion of the case that he

had no objections to the instructions.  Did Chaco waive his ability to claim the

district court erred in not giving a limiting instruction?  If not, did the district court

plainly err by not giving one *sua sponte?*

## STATEMENT OF THE CASE

On December 29, 2010, a grand jury in the District of New Mexico returned

a three-count indictment against defendant/appellant Eddie Chaco, Jr.  Doc. 2.

Each count accused Chaco of violating  18 U.S.C. §§ 1153, 2241(c), and

2246(2)(D) (aggravated sexual abuse of a minor who was less than twelve years of

age) between August, 2008 and May, 2010.  *Id.*  Counts 1 and 3 alleged the sexual

act consisted of contact between Chaco's penis and the victim's (referred to as

Jane Doe) vagina; count 2 alleged the sexual act consisted of Chaco's attempt to

lick Jane Doe's vagina.  *Id.*

Chaco was tried by a jury, United States District Judge James O. Browning presiding, beginning August 9, 2011.  TT at 1-972.[1]  On August 10, 2011, the jury returned guilty verdicts on all counts.  *Id.* at 969.  On December 15, 2011, the district court conducted a sentencing hearing.  12/15/11 Tr. at 1-36.  The court remanded Chaco to the custody of the Bureau of Prisons to be incarcerated for a total term of 516 months on each count, and ordered that the terms of imprisonment be served concurrently.[2]  *Id.* at 22.

On April 18, 2012, the district court entered a judgment memorializing the sentence it had imposed.  Doc. 133.  On April 19, 2012, Chaco filed a timely notice of appeal.  Doc. 134.

<u>STATEMENT OF THE FACTS</u>

A.    <u>The Testimony of Jane Doe</u>[3]

When Jane Doe (Jane) was in the fourth and fifth grades, she lived with her paternal grandparents at a compound in Tohajiile, New Mexico.  TT at 397, 399,

---

[1] "TT" stands for the transcript of the trial.  It is contained in volume 3 of the record on appeal.

[2] The district court varied downward in imposing sentence.  The guideline range was life imprisonment.  12/15/11 Tr. at 4.

[3] Jane Doe's real name appears throughout the trial transcript  This brief uses "Jane Doe" in compliance with Section IIK(1) of the Tenth Circuit EM/ECF User's Manual.

583.  The compound is located on the Navajo reservation and is located in Indian

Country.  *Id.* at 393.  The defendant, Eddie Chaco, Jr., is an Indian.  *Id.* at 397.  He

is Jane's father.  *Id.* at 395, 582.  Jane was twelve years old when she testified in

August, 2011.  *Id.* at 579.

Chaco lived at the compound from time to time while Jane was in the fourth

and fifth grades.  *Id.* at 585.  The grandparents lived in the main hogan at the

compound.  *Id.*  Chaco built a small one-room house on the compound, and slept

there when he was at the compound.  *Id.* at 592, 595.  Jane stayed in the small

house with him.  *Id.* at 596.  Chaco and Jane slept on a couch that pulled out.  *Id.*

at 597, 599.

Jane usually would give Chaco a good-night kiss on the cheek.  *Id.* at 598.

One night, Chaco kissed her on the lips before Jane went to sleep.  *Id.* at 598, 600.

That night, Chaco awakened Jane and turned her onto her back and began

removing her pajama pants.  *Id.* at 601.  Chaco then removed Jane's pajama top,

her bra, and her underwear, removed his pants and boxers, and got on top of Jane.

*Id.* at 602.  It was "like a peanut-butter-and-jelly sandwich."  *Id.*  Chaco also

touched Jane in her front private part where she pees.  *Id.* at 603.  Jane began

crying, and Chaco asked why she was crying.  *Id.* at 604.  Jane said Chaco was

3

hurting her.  *Id.*  She described the pain in her front private part as a ten on a one-to-ten scale.  *Id.* at 605.

The next act of abuse that Jane remembered occurred at the same location. *Id.* at 607.  Chaco turned Jane over onto her back while she was sleeping.  *Id.* at 608.  Chaco removed all of Jane's clothing, and began kissing her on her lips.  *Id.* Chaco put his front private part (the part a male pees out of) into Jane's front private part.  *Id.* at 609.  He then kept "on moving up and down."  *Id.* at 610.  Jane felt "white stuff" by her front private part.  *Id.* at 610-11.  When Chaco got off of Jane, he asked why she was crying.  *Id.* at 611.  She told her father that he had hurt her.  *Id.*  Chaco said he would never do it again.  *Id.*  Chaco then wiped the white stuff off of Jane with his shirt.  *Id.*

Jane testified that her father put his private part in her private part "about six times."  *Id.* at 613.  Later, she testified it had happened "about four times."  *Id.* at 621.  In addition, Chaco touched Jane's front private parts "about three times."  *Id.* at 614.  Chaco also touched Jane under her bra and "squeez[ed] them, like -- a ball."  *Id.* at 618.  On another occasion, Chaco turned Jane over so that her face was against the mattress.  *Id.* at 619.  She was naked.  *Id.*  Chaco then touched Jane on her butt -- "I think he used his hands."  *Id.*  On one occasion at the hogan of

Jane's grandparents, Chaco "wanted to lick my private." *Id.* at 631. Chaco woke Jane up and asked if he could lick it. *Id.* at 632.

    B.    <u>Other Evidence</u>

Loretta Rael was a member of the Rock of Salvation Worship Center in Albuquerque, and her husband, Steve, was a pastor at the church. *Id.* at 508-09. Jane Doe's grandparents attended church there regularly and often would bring Jane Doe to services. *Id.* at 510.

The Raels developed a close relationship with Jane Doe through the church. *Id.* at 511. Jane's grandmother would ask the Raels if Jane Doe could spend time with them at either their Rio Rancho home or their home in Taos. *Id.* at 511-12. The Raels said she could, and Jane would spend from three to five days at a time with the Raels. *Id.* at 512.

The Rael's adult daughter, Angelica Rael, lived with her parents in Taos during the summer of 2010, and so did Jane Doe. *Id.* at 500. When it was time for Jane to return to Tohajiile, she told Angelica that she, Jane, did not want to return. *Id.* at 501. Angelica asked Jane why she did not want to go home, and Jane Doe told her why. *Id*. at 503. Jane was afraid, was crying, was embarrassed, and was shaking. *Id.* That evening, Angelica reported what Jane had told her to her parents. *Id.* at 504. Angelica wanted to help Jane. *Id.* "I don't think that's right in

any way, what she told me, and, as an adult, I think every adult should -- be there to help a kid when they relay that kind of information to you." *Id.*

When Loretta Rael received the information concerning the sexual abuse of Jane Doe, Loretta and Steve Rael discussed the information with Jane. *Id.* at 513. Jane, who was sad, embarrassed, and crying, provided the Raels with details of the abuse. *Id.* Loretta Rael called Jane's grandmother the next day and relayed the information Jane had provided. *Id.* at 514. Loretta also called the other pastors from their church and, at their suggestion, arranged a meeting after the regular church service. *Id.* at 515. The meeting was attended by the pastors, the Raels, Jane's grandparents, and Jane. *Id.* at 516. Jane told her grandparents and the pastors what had happened to her. *Id.* at 517. After the meeting, Loretta Rael phoned the appropriate social services agency and reported the allegations of sexual abuse of Jane Doe. *Id.* at 518.

On June 9, 2010, a social worker from the Navajo Nation division of social services notified the Federal Bureau of Investigation (FBI) of the allegations of sexual abuse. *Id.* at 509-10. The original report to the social services agency had been made by both Linda Rael and Jane Doe herself. *Id.* at 510. On June 30, 2010, an FBI agent arranged for a forensic interview of Jane Doe. *Id.* at 461. The interview was conducted at a safe house in Albuquerque. *Id.* at 562.

On November 4, 2010, a professor of pediatrics from the University of New

Mexico School of Medicine conducted a sexual abuse examination of Jane Doe.

*Id.* at 469, 471, 476.  Jane told the physician that her father had told her to lick his

privates, that he would remove her clothes, that he would touch her front, her

chest, and her butt, that he put his thing in her front private part, that he also put

his finger there, that white stuff came out of his thing, that he wiped off the white

stuff, and that she had reported what had happened to the pastor of her church and

his wife because she knew they would do something about it.  *Id.* at 477-79.  The

doctor testified that the physical examination of Jane Doe was completely normal,

a result which occurs in 94 to 98% of children who have been abused sexually.  *Id.*

at 486-88.

      C.    <u>The Defense Case</u>

The defense presented the testimony of four witnesses.  *Id.* at 724-898.  A

defense investigator, Milton Rodriguez, took photographs of the compound in

Tohajiile.  *Id.* at 729.  He said that DNA evidence can sometimes be of real value

in a sexual assault case, and that the FBI sometimes conducts an investigation to

determine whether semen is present on the clothing of an alleged victim.  *Id.* at

726.  He opined that the Raels should not have talked about what had happened to

Jane Doe in a church setting.  *Id.* at 734.

Chaco's grandmother, Angie Chaco, said that on June 9, 2010, she and her husband met with the Raels, other pastors, and Jane Doe after church services. *Id.* at 755, 770. Ms. Rael asked Jane Doe a question, and Jane responded. *Id.* at 772. Chaco's grandmother began crying because she knew that Chaco had not done what Jane said he had done. *Id.* at 773. Angie Chaco asked Jane why she had not told Jane's grandfather. *Id.* Jane said she was scared. *Id.*

Renee Chaco, Jane Doe's aunt, lived off and on at the compound in Tohajiile. *Id.* at 799, 802. She said that after Chaco had been released from jail, she saw her daughter, her niece MC, and her niece Jane Doe naked in a van which was parked at the compound. *Id.* at 808. Renne Chaco said she saw Jane take the hand of Renee's daughter and move it toward MC's private part. *Id.* Renee screamed, and other family members took their children and went their separate ways. *Id.* at 809. The family then got together and prayed for their children. *Id.*

Chaco testified. *Id.* at 824-894. He acknowledged that he had sustained four felony convictions, and also had been incarcerated for violating the terms of his parole. *Id.* at 827, 836. Chaco said he had two sons and a daughter, Jane Doe. *Id.* at 825-26. Chaco has seen one of his sons only once in seven years, and has seen the other son only three times in eight years. *Id.* at 828. When he was

released from prison on February 10, 2008, Chaco went to live with his mother at the compound in Tohajiile. *Id.* at 832.

Chaco said that, as part of his Navajo religion, he was required to build a hogan for his family when his daughter reached puberty. *Id.* at 833. He built a 24x24 hogan on land in the compound. *Id.* at 834. He slept there when he was at the compound, but Jane Doe never slept there. *Id.* at 848.

Chaco said he never helped Jane Doe change into her pajamas, never slept in the same room as Jane Doe, never kissed Jane Doe on the lips, never removed Jane Doe's bra, never removed Jane Doe's underwear, never got on top of Jane Doe, never touched Jane Doe's privates, never touched Jane Doe's butt, never touched Jane Doe with his penis, never placed his finger or his penis in Jane Doe's vagina, never woke Jane Doe and turned her on her back, never removed Jane Does's clothes, and never ejaculated on Jane Doe. *Id.* at 858-60.

## SUMMARY OF ARGUMENT

A defendant waives the right to claim error in this Court when the defendant deliberately abandons the issue in the district court. The district court told Chaco in a written order that Chaco could submit an instruction regarding uncharged conduct if he wanted to do so. Chaco did not request an instruction. He told the district court at the conclusion of the case that he had no objections to the instructions the court would be giving. He has waived his right to claim the

district court erred by failing to provide the jury with an unrequested instruction. This Court cannot review his claim of error under any standard of review.

If the Court does consider the issue, it must review for plain error only. It need reach only the first prong of plain error review. The instructions the district court gave correctly stated the governing law, and provided appropriate guidance for how the jury should consider the evidence it was presented. The district court did not err and therefore did not plainly err.

ARGUMENT

WHEN A JUDGE INFORMS A DEFENDANT THAT THE DEFENDANT CAN SUBMIT A JURY INSTRUCTION CONCERNING UNCHARGED CONDUCT, AND THE DEFENDANT CHOOSES NOT TO SUBMIT ONE, THE DEFENDANT HAS WAIVED HIS RIGHT TO CLAIM THE DISTRICT COURT ERRED BY NOT INSTRUCTING THE JURY ON UNCHARGED CONDUCT.

A.    Standard of Review

This Court cannot review an issue that has been waived under any standard of review.[4] This Court reviews issues which have been forfeited under the plain error standard of review.[5]

---

[4] *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007); *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir), *reh'g granted in part on other grounds*, 88 F.3d 397 (10th Cir. 1996).

[5] *United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012).

B.    <u>Discussion</u>

Chacon brings a single challenge to his convictions.  He contends that the district court should have, but did not, provide the jury with a limiting instruction which informed the jury of how it should evaluate evidence concerning uncharged acts of sexual abuse which the court admitted under Rule 414.  Chaco's appellate position differs markedly from the position he took in the district court.  There he informed the court that he would not tender any proposed jury instructions, and that he was satisfied with the instructions proposed by the United States, and with the instructions given by the district court.  In addition, the district court specifically stated that "Chaco should prepare and submit a limiting instruction if he would like the Court to give it."  Doc. 85 at 11.  Chaco affirmatively chose not to submit a limiting instruction.  He therefore has waived the issue, and this Court can afford him no relief.

1.    *Framing the Issue in the District Court*

Each count of the indictment alleged that the charged crime occurred "on or between August 2008 and May 2010."  Doc. 2.  Because of the necessity of framing the "on or about" allegation broadly, the United States filed a motion in *limine* regarding similar and repeated sexual assaults.  Doc. 40.  It pointed out that during a forensic interview, Jane Doe had estimated that she had been victimized "approximately ten different times" during the relevant time frame.  *Id.* at 2.  Rule

414(a) of the Federal Rules of Evidence,[6] the United States maintained, authorized the admission of evidence concerning the additional acts of sexual abuse, all of which had occurred during the "on or between" dates identified in the indictment.

Chaco filed no response to the motion. *See generally docket sheet*. The district court considered the motion at a pre-trial conference on August 3, 2011. 8/3/11 Tr. at 1-99. The court began the conference by noting that the United States had filed proposed jury instructions, and that Chaco had not. *Id.* at 4. Chaco's lawyer told the court, "there's only one issue with regard to instructions. That's the reason I didn't submit instructions. There will be no additional instructions that we will be submitting." *Id.* at 4-5. He identified the use of the words "knowingly" and "attempt" in the elements instructions as his only objection to the instructions tendered by the United States. *Id.* at 5.

When the district court addressed the motion in *limine*, Chaco's attorney said he opposed to the motion. *Id.* at 87. He claimed the United States failed to provide notice of its intent to produce the requested evidence within 15 days as required by Rule 414. *Id.* He also contended that the evidence was of uncharged acts, and that the United States should have obtained a superceding indictment,

---

[6] "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

rather than seek to introduce the evidence under Rule 414. *Id.* Chaco demanded a proffer of what the United States intended to offer. *Id.* at 89. The prosecutor pointed out that Chaco had something better than a proffer -- a copy of the video-taped forensic interview of Jane Doe which had been provided to Chaco "months and months ago." *Id.* at 90, 92. Chaco concluded his objection by stating, "there is no dispute that the Government provided it. The only issue is with regard to the relevance, Your Honor." *Id.* The district court stated it was inclined to grant the motion but wanted to look at the issue a little further. *Id.*

The district court granted the motion in a memorandum opinion and order. Doc. 85. First, it noted that Chaco had only two objections to the motion: he claimed the evidence was irrelevant and that the United States should have obtained a superceding indictment. *Id.* at 1. It then found that the proffered evidence met the requirements of Rules 414 and 403. *Id.* at 1. In making its Rule 403 analysis, the court noted that "with an appropriate jury instruction, such as the one used in <u>United States v. McHorse</u>[7], the chance that the proffered evidence will contribute to an improperly based verdict is significantly reduced." *Id.* at 11-12. The court quoted the instruction in a footnote, and directed Chaco to " prepare and submit a limiting instruction if he would like the Court to give it." *Id.* at 11.

---

[7] 179 F.3d 889, 903 (10th Cir 1999).

Chaco submitted three requested jury instructions, none of which dealt with uncharged misconduct.  Doc. 76.  Before the trial began, the district court provided the parties with a copy of the jury instructions it intended to give.  TT at 356.  At the close of the case, it reviewed the instructions it intended to give, and inquired, "anything else you need to say about the instructions?"  *Id.* at 719.  Chaco's lawyer responded, "No, Your Honor.  Thank You."  *Id.*

>    2.    *Waiver vs. Plain Error*

When a district judge invites a lawyer to file a requested jury instruction and the lawyer chooses not do so, has the lawyer intentionally relinquished his or her right to request an instruction?  When a district judge asks a lawyer if he or she has any objection to proposed jury instructions and the lawyer says, "No, Your Honor," is that statement an intentional relinquishment of the lawyer's right to request an instruction?  Can inaction be action?  Consequences flow from the answers to these seemingly pedantic questions.  If the answers are affirmative ones, this Court cannot review a claim that the district court should have given an unrequested instructed.  If the answers are negative ones, the Court can review a claim that the court should have given an unrequested only for plain error.  This Court should conclude that the correct answers are the affirmative ones.

"'Waiver is the intentional relinquishment or abandonment of a known right' whereas 'forfeiture is the failure to make the timely assertion of a right.'"[8] And this Court has explained that "waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it."[9]  In this case, Chaco considered whether to request a limiting jury instruction.  Two facts compel this conclusion.  First, the district judge told him in a written order to request one if he wanted one.  That he made no such request shows an intentional decision to forego having the jury instructed on how to consider the uncharged conduct depicted in the video-taped forensic interview.  Second, at the end of the case, the judge asked if Chaco had any comments on the proposed instructions.  He said that he did not.  That too was a considered and intentional decision.[10]

This case is remarkably similar to *Cruz-Rodriguez*.  There, the defendant claimed on appeal that the jury instructions given in the district court effectively amended the indictment.[11]  But in the district court, the defendant had stated ,"I

---

[8] *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

[9] *Cruz-Rodriguez*, 570 F.3d at 1183.

[10] The district court did instruct the jury that "Mr. Chaco is not on trial for any act, conduct, or crime not charged in the indictment."  TT at 913-14.

[11] *Id.* at 1182.

15

agree with the verdict form and the instructions that have been offered."[12]  Chaco did what Cruz-Rodriguez did.  He first claimed a problem with the jury instructions, then withdrew his objection by affirmatively telling the court that he had no problem with the proposed instructions.  This Court had little difficulty in concluding that Cruz-Rodriguez had waived the issue he attempted to raise on appeal.  This Court should have little difficulty in reaching the same conclusion in this case.

It would be extraordinary for a defense lawyer to say, in response to a court's inquiry if he or she had any objections to proposed instructions, "I know of one hundred instructions I could have requested, I have thoughtfully considered each of them, and I deliberately abandon my right to submit any of them for your consideration."  If the lawyer said nothing, it would be impossible, absent a confession, to show that the lawyer was using silence tactically to avoid a waiver claim if things did not turn out favorably to his or her position.[13]  But when a judge files an opinion in which the judge tells a lawyer to submit an instruction if the lawyer wants one, and the lawyer chooses not to submit one, it is the equivalent of

---

[12] *Id.* at 1181.

[13] *See United States v. Turrietta ,* __ F.3d __, 2012 WL 3711871 *2 (10th Cir. Aug. 28, 2012), and cases cited therein.

the lawyer saying, "I know I can submit a proposed instruction because you told me I could. I choose not to. I abandon my right to do so." That is what happened in this case. That is why Chaco has waived his right to challenge the failure of the district court to instruct the jury on how it should handle evidence of uncharged conduct.

If the Court determines that evidence of deliberate abandonment is not present, it must review Chaco's claim for plain error only. Plain error is error, that is plain, that affects a defendant's substantial rights, and which "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[14] Chaco cannot meet any of the four factors, but the Court need address only the first one.

The district court did not err, plainly or otherwise. The instructions the district court gave accurately stated the governing law.[15] They set forth the elements the United States were required to prove beyond reasonable doubt, defined the evidence the jurors could consider, explained the difference between direct and circumstantial evidence, informed the jurors that they were the sole judges of witness credibility, and told the jurors they could not consider punishment. TT at 903-08. The district court did not err in instructing the jury,

_____

[14] *United States v. Corderey*, 656 F.3d 1103, 1105 (10th Cir. 2011).

[15] *United States v. Pinson*, 542 F.3d 822, 831 (10th Cir. 2008).

17

and did not err in failing to give any unrequested instructions. None of Chaco's

substantial rights were affected by the instructions the court gave. And the public

reputation of the federal judiciary for fairness and integrity is as robust today and

it was the day Chaco was tried.

Chaco contends that this Court reviews his claim of error *de novo*.[16] That is

simply wrong. This Court did review a Rule 414 issue in *McHorse de novo*, but

did not review a jury instruction issue under that standard. McHorse claimed that

Rule 414, as applied to the facts of his case, violated the due process clause of the

Fifth Amendment, and the Court reviewed the issue *de novo*.[17] Chaco concedes

that the district court properly admitted evidence of uncharged sexual

misconduct.[18] And although he includes the phrase "due process" in the title of his

issue, Chaco makes no constitutional argument in his brief, and made no

constitutional argument in the district court. He seems to suggest that the district

court misapplied Rule 403 in making its evidentiary ruling.[19] However, he does

---

[16] Appellant's Brief-in-Chief (ABIC) at 7 (citing *United States v. McHorse*, 179 F.3d 889 (10th Cir. 1999)).

[17] *McHorse*, 179 F.3d at 896.

[18] "Mr. Chaco does not dispute that the 'other offenses' evidence presented to the jury in his case falls within the broad outline of Rule 414." ABIC at 8.

[19] "Critically, however, the presentation of Rule 414 evidence must always be tempered by a close application of Rule 403." *Id.*

not challenge, let alone mention, the district court's thoughtful explanation for how it conducted the balancing required by Rule 403.  Doc. 85 at 6-8.  Moreover, this Court reviews decisions relating to Rule 403 for abuse of discretion, not *de novo*.[20]

*McHorse* is a peculiar authority on which to tether an argument related to jury instructions concerning Rule 414.  McHorse challenged the jury instruction which Chaco claims the district court should have given in his case.  McHorse contended the instruction did not adequately safeguard against the possibility that the jury would misuse the propensity evidence the district court admitted.[21] Because McHorse did not raise the issue in the district court, this Court reviewed his challenge for plain error and found none.[16]  Moreover, the factual differences between *McHorse* and this case are so stark as to dilute the precedential value of the former.  In *McHorse*, the uncharged conduct came in the form of testimony from two child-victims who were not named in the indictment, and testimony from three other persons including a physician and a psychotherapist.[17]  In this case, the

---

[20] *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999).

[21] *McHorse*, 179 F.3d at 903.

[16] *Id.*

[17] *Id.* at 894-95.

uncharged conduct came in the form of a thirty-minute videotaped forensic interview of the only victim in the case. *McHorse* is not a basis for disturbing the verdicts the jury returned.

### CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT

This Court should affirm the judgment from which this appeal is taken.

Because the defendant has been ordered to serve a very lengthy sentence, the United States requests oral argument to address any concerns that panel members may have which have not been addressed adequately in the briefs of the parties.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

*s\ David N. Williams*

DAVID N. WILLIAMS
Assistant United States Attorney
NM Bar No. 2912
Post Office Box 607
Albuquerque, NM  87103
(505) 346-7274
david.williams4@usdoj.gov
Attorneys for Appellee

<u>BRIEF FORMAT CERTIFICATION</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief is proportionately spaced, has a typeface of 14 points or more, and contains 5,354 words.

I relied on my word processor to obtain the count.  My wordprocessor software is Corel WordPerfect X4.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

DATED this 6th day of September, 2012.

*s\ David N. Williams*
DAVID N. WILLIAMS
Assistant United States Attorney

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I HEREBY CERTIFY that the foregoing Answer Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on this 6th day of September, 2012, and seven photocopies of Appellee's Answer Brief will be sent by Federal Express to the United States Court of Appeals for the Tenth Circuit, Office of the Clerk, located at the Byron White United States Courthouse, 1823 Stout Street, Denver, Colorado 80257, within two business days of the electronic filing.

I ALSO CERTIFY that D. Eric Hannum, attorney for Defendant-Appellant Eddie Chaco, Jr., is a registered CM/ECF user and that service will be accomplished by the appellate CM/ECF system.

I ALSO CERTIFY that all required privacy redactions have been made, and the copy of this document filed using the CM/ECF system is an exact copy of the hard copies filed with the Clerk.

I ALSO CERTIFY that the digital submission of this document has been scanned for viruses with scanning program Trend Micro OfficeScan Client 10.5.1997, most recently updated September 5, 2012, and, according to the program, the file is free of viruses.

*s\ David N. Williams*
DAVID N. WILLIAMS
Assistant United States Attorney
NM Bar No. 2912
P.O. Box 607
Albuquerque, NM  87103
(505) 346-7274
david.williams4@usdoj.gov

23